RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0099P (6th Cir.)
File Name: 03a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

NATIONAL HOCKEY LEAGUE
PLAYERS' ASSOCIATION and
ANTHONY AQUINO,
     *Plaintiffs-Appellees,*

     *v.*

PLYMOUTH WHALERS
HOCKEY CLUB et al.,
     *Defendants-Appellants.*

No. 02-2066

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-70968—Victoria A. Roberts, District Judge.

Argued: February 5, 2003

Decided and Filed: April 2, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
POLSTER, District Judge.*

---

    * The Honorable Dan Aaron Polster, United States District Judge for
the Northern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Stephen F. Wasinger, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, for Appellants. Michael P. Conway, GRIPPO & ELDEN, Chicago, Illinois, for Appellees. **ON BRIEF:** Stephen F. Wasinger, Gregory D. Hanley, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, for Appellants. Michael P. Conway, John R. McCambridge, Kelly C. Wilson, John E. Bucheit, GRIPPO & ELDEN, Chicago, Illinois, for Appellees.

---

## OPINION

---

    JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellee National Hockey League Players' Association (NHLPA) brought this action in the United States District Court for the Eastern District of Michigan, alleging that the Ontario Hockey League (OHL) and all of its member teams conspired with the National Hockey League (NHL) to violate Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. NHLPA sought declaratory judgment and injunctive relief on behalf of the hockey players it represents. NHLPA then moved for leave to amend the complaint to add Anthony Aquino as a plaintiff and also requested a preliminary injunction on his behalf. The district court granted NHLPA's motion to amend and issued a preliminary injunction. On November 4, 2002, this court stayed the preliminary injunction. Defendants-appellants, OHL and its member teams, appeal the district court's grant of the preliminary injunction. For the reasons set forth below, we reverse the district court's grant of the preliminary injunction.

## I.   FACTUAL AND PROCEDURAL HISTORY

The NHLPA, an unincorporated labor association organized under the laws of Ontario, is the exclusive collective bargaining representative for all current and future NHL hockey players.  The OHL is one of three amateur hockey leagues that comprise the Canadian Hockey League (CHL).  The OHL consists of twenty teams whose players range in age from sixteen to twenty.  While the vast majority of the OHL clubs are located within Ontario, Canada, two of the teams are located in Michigan, and one team is located in Pennsylvania.  According to appellees, the OHL is a major source of players for the NHL, and various financial and other agreements exist between the two organizations.

The OHL eligibility rules provide that each team may have only three twenty-year-old players, typically referred to as "overage" players.  In addition to limiting the number of overage players, the OHL adopted a rule in August of 2000 under which any overage player signed by an OHL team must have been on a Canadian Hockey Association (CHA) or USA Hockey Player's Registration Certificate the previous season.  This rule, commonly referred to as the Van Ryn Rule[1] (also

---

[1]Mike Van Ryn is a former University of Michigan hockey player.  Van Ryn was drafted by the New Jersey Devils, an NHL hockey team, while still a student at Michigan.  In June 1998, the Devils acquired the exclusive rights to negotiate with and sign Van Ryn.  Van Ryn played hockey for Michigan during the 1998-1999 season. After that season, Van Ryn decided to explore his options to become a professional hockey player.  Van Ryn took advantage of the OHL rule in effect at that time, which allowed clubs to sign overage players regardless of where they had played the previous season, and he signed with the Sarnia Sting. Pursuant to the Collective Bargaining Agreement (CBA) between the NHL and the NHLPA, if New Jersey did not sign Van Ryn by June 1, 2000, he would become a free agent.  Therefore, by signing with the Sting, Van Ryn believed that he would become an unrestricted free agent, which would have allowed him to sign with any NHL team.  New Jersey, however, declared that Van Ryn's decision to play for the Sting rendered him a "defected" player under the CBA, thereby preventing him from becoming an unrestricted free agent.  The NHLPA filed a grievance on Van Ryn's

referred to as "the Rule"), effectively prevents OHL teams from signing any twenty-year-old United States college hockey players because the National Collegiate Athletic Association (NCAA) does not allow individuals holding a CHA or USA Hockey Player's Registration Certificate to play hockey at an NCAA school.

Anthony Aquino is a twenty-year-old hockey player who has been affected by the Van Ryn Rule.  At age sixteen, Aquino, a Canadian citizen, was drafted by an OHL team, the Owen Sound Attack.  Instead of playing for the Attack, Aquino chose to attend Merrimack College in Massachusetts.  Aquino began playing hockey at Merrimack during the 1999-2000 season and played for three seasons.  In June 2001, Aquino was drafted by the Dallas Stars, an NHL hockey team.  During the 2001-2002 season, the Attack traded its rights to Aquino to the Oshawa Generals, another OHL team.  While attending Merrimack College, Aquino was placed on the Generals' "protected list," which prevented Aquino from negotiating or signing with any other team in the CHL.

Aquino decided against returning to Merrimack for a fourth season.  After deciding not to return to Merrimack, Aquino believed that he had two options for working toward a career in the NHL.  Aquino could attempt to sign with and play for the team that drafted him, the Stars.  Signing with the Stars, however, would result in his becoming a restricted agent with that team for the next eleven years. In the alternative, Aquino could play in the CHL, most likely for the Generals, an OHL team,  for one year as an overage player, which would allow him to become a free agent in 2003.  The Van Ryn Rule, however, currently prevents Aquino from playing for the

---

behalf challenging New Jersey's position and the NHLPA prevailed. Van Ryn then signed with the St. Louis Blues, another NHL team, and received higher compensation than the Devils offered him.  Shortly thereafter, the OHL teams agreed to the new Van Ryn Rule, effectively barring twenty-year-old United States college players from playing in the OHL.

Generals. While the NHL drafts many players from the OHL, which mirrors the style of play, rules, practice and game schedule of the NHL, players are also drafted from American colleges and high schools, Canadian Junior leagues, American Junior Leagues, minor professional leagues, "midget" leagues, and international leagues. While the parties disagree about Aquino's options for becoming an unrestricted free agent, Aquino's position is that playing for the Generals is the only route to becoming an unrestricted free agent. His position is that, assuming he could join a professional league other than the NHL or the CHL, he would fall into "defected" status, causing the Stars to hold his exclusive rights in perpetuity.

On March 12, 2001, appellee NHLPA brought this action alleging that, in adopting the Van Ryn Rule, the OHL and its member teams conspired with the NHL in violation of Section 1 of the Sherman Act. The original complaint sought declaratory and injunctive relief on behalf of present and future NHL players. On May 16, 2001, appellants moved to dismiss on the grounds of *forum non conveniens* and lack of personal jurisdiction.[2] The district court denied appellants'

---

[2] Appellants attempt to appeal the district court's decision denying their motion to dismiss on *forum non conveniens* grounds. Appellants argue that the order is appealable because it served as a basis for granting the injunction and was therefore inextricably intertwined with the district court's ruling granting the preliminary injunction. An appellate court has discretion to exercise pendent appellate jurisdiction "where the appealable and non-appealable issues are inextricably intertwined," meaning "when . . . resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Brennan v. Township of Northville*, 78 F.3d 1152, 1157-58 (6th Cir. 1996) (quotations omitted). In the present case, a resolution of the appeal of the district court's grant of a preliminary injunction does not necessarily resolve the issue of whether Michigan is a proper forum. Moreover, the decision of whether to dismiss a case under the doctrine of *forum non conveniens* rests within the sound discretion of the trial court, and the denial of such a motion is not an appealable interlocutory order under 28 U.S.C. § 1292. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988). Therefore, we decline to consider appellants' appeal of the district court's denial of appellants' motion to dismiss for *forum non conveniens*.

motion to dismiss. *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club et al.*, 166 F. Supp. 2d 1155 (E.D. Mich. 2001)). On July 18, 2002, appellees moved to add Anthony Aquino as a plaintiff and requested a preliminary injunction on his behalf.

On August 30, 2002, the district court granted NHLPA's request to amend the complaint to add Aquino as a plaintiff and granted a preliminary injunction ordering the OHL to refrain from applying the Van Ryn Rule, which prohibits any OHL team from considering or hiring Aquino. This timely appeal followed.

After filing their appeal, appellants submitted a motion to stay the preliminary injunction pending disposition of the appeal. On November 4, 2002, a panel of this court granted appellants' motion for a stay and ordered an expedited appeal. The case was assigned to this panel and placed on the oral argument calendar for February 5, 2003. Appellees then filed a motion seeking reconsideration and requesting that the court lift the stay. This panel denied the motion for reconsideration and deferred ruling on the issues surrounding the preliminary injunction until after oral argument.

## II. ANALYSIS

### A. Foreign Trade Antitrust Improvements Act

Appellants first argue that this court lacks subject matter jurisdiction over Aquino's antitrust claims because these claims are barred by the Foreign Trade Antitrust Improvements Act (FTAIA), 15 U.S.C. § 6a, which limits the extraterritorial application of the Sherman Act. In ruling on appellees' motion to amend, the district court determined that the FTAIA did not prohibit the court from exercising jurisdiction over Aquino's antitrust claims because Aquino adequately alleged that the Van Ryn Rule is an unreasonable restraint of trade and that the Rule significantly affects United States commerce. Appellants now argue not only that the FTAIA bars Aquino's antitrust claims, but also that the bar to

Aquino's antitrust claims deprived the district court of jurisdiction to issue an injunction. Appellants base the argument that the district court lacked jurisdiction to enjoin application of the Rule on a contention that the NHLPA did not demonstrate any right to a preliminary injunction on its own behalf.

Appellants' argument fails for two reasons. First, the district court's jurisdiction to issue an injunction was not dependent on the viability of Aquino's claims. In denying the motion to dismiss, the district court determined that the NHLPA had standing to seek injunctive relief on behalf of present and future NHL players. The motion for a preliminary injunction specifically noted that the NHLPA sought relief on behalf of Aquino if he was not added as a party. Consequently, even if the FTAIA bars Aquino's claims, the NHLPA's claim for injunctive relief on his behalf and on behalf of other players remains. Second, in the district court appellants raised the argument that the FTAIA barred Aquino's claims in response to the motion to amend. We appropriately consider the issue only in the context in which it was raised in the district court. *See Estate of Quirk v. C.I.R.*, 928 F.2d 751, 758 (6th Cir. 1991). Yet, the district court's grant of the motion to amend is not an appealable interlocutory order under 28 U.S.C. § 1292. Thus, an appeal of the FTAIA issue is not properly before the court.

## B. Preliminary Injunction

We review a lower court's decision to grant a preliminary injunction for abuse of discretion. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). When considering a motion for preliminary injunction, the district court should consider four

factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Id.* The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *DeLorean*, 755 F.2d at 1229. Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue. *Id.*

### 1. Likelihood of Success on the Merits

After recognizing that the court must determine whether the Van Ryn Rule amounts to an unreasonable restraint of trade in violation of Section 1 of the Sherman Act under either a *per se* analysis or a rule of reason analysis, the district court applied a *per se* analysis because it found that the Van Ryn Rule constitutes a group boycott. Under the *per se* analysis, the district court concluded that appellees had a substantial likelihood of success on the merits. Appellants contend that the district court erred in applying a *per se* rule and in its conclusion about the likelihood of success on the merits.

Section 1 of the Sherman Act provides that "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. Because nearly every contract that binds parties to an agreed course of conduct "is a restraint of trade" of some sort, the Supreme Court has limited the restrictions contained in Section 1 to bar only "unreasonable restraints of trade." *Nat'l Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 98 (1984) (hereinafter referred to as "*Board of Regents*"). In order to establish their antitrust claim, appellees must prove that appellants (1) participated in an agreement that (2) unreasonably restrained trade in the

relevant market. *See Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1010, 1016 (10th Cir. 1998). The district court found, and the parties do not contest, that appellants have entered into an agreement via their adoption of the Van Ryn Rule. Appellants, however, contest the district court's finding that the Van Ryn Rule is an unreasonable restraint of trade.

"Two analytical approaches are used to determine whether a defendant's conduct unreasonably restrains trade: the *per se* rule and the rule of reason." *Id.* at 1016 (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 963 (10th Cir.1994)). The *per se* rule identifies certain practices that "are entirely void of redeeming competitive rationales." *Id.* If a court determines that a practice is illegal *per se*, no examination of the practice's impact on the market or the procompetitive justifications for the practice is necessary for finding a violation of antitrust law. *Id.* The rule of reason, however, requires a court to analyze the history of the restraint and the restraint's effect on competition. *Id.*; *see Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1183 (D.C. Cir. 1978). The rule of reason analysis employs a burden-shifting framework. *See California Dental Ass'n v. FTC*, 526 U.S. 756, 775 n. 12 (1999). First, the plaintiff must establish that the restraint produces significant anticompetitive effects within the relevant product and geographic markets. *See Tanaka v. Univ. of Southern Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). "If the plaintiff meets this burden, the defendant must come forward with evidence of the restraint's procompetitive effects" to establish that the alleged conduct justifies the otherwise anticompetitive injuries. *Id.; see also United States v. Brown Univ.*, 5 F.3d 658, 666-69 (3d Cir. 1993). If the defendant is able to demonstrate procompetitive effects, the plaintiff then must show that any legitimate objectives can be achieved in a substantially less restrictive manner. *Law*, 134 F.3d at 1019.

The Supreme Court has stated that the *per se* rule is a "demanding" standard that should be applied only in clear cut cases. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S.

36, 49-50 (1977); *accord Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 178 (1965) (finding that "the area of *per se* illegality is carefully limited."). Therefore, "courts consistently have analyzed challenged conduct under the rule of reason when dealing with an industry in which some horizontal restraints are necessary for the availability of a product" such as sports leagues. *Law*, 134 F.3d at 1019. Moreover, the Supreme Court has recognized that in cases involving industries "in which horizontal restraints on competition are essential if the product is to be available at all," the rule of reason analysis should apply. *See Board of Regents*, 468 U.S. at 100-01; *Banks v. NCAA*, 977 F.2d 1081, 1088 (7th Cir. 1992) (finding that "[u]nder the Supreme Court's ruling in [*Board of Regents*], allegations that the NCAA rules restrain trade or commerce may not be viewed as *per se* violations of the Sherman Act"); *see also* Mark C. Anderson, *Self-Regulation and League Rules Under the Sherman Act*, 30 Cap. U. L. Rev. 125, 149 (2002) (noting that "[i]t is now well established through the myriad of case law that rules and regulations normally employed by professional sports leagues and other organizations are not subject to the *per se* rule, but rather will be analyzed under the rule of reason."); Robert E. Freitas, *Overview: Looking Ahead at Sports and the Antitrust Law*, 14 Antitrust 15, 16 (Spring 2000) (stating that "it is now settled that the practices typically associated with the organization of professional sports leagues and other organizations such as the NCAA are not subject to the *per se* rule."). Because hockey leagues involve the same types of restraints discussed by the Supreme Court in *Board of Regents*, the district court erred in failing to apply the rule of reason analysis.[3]

---

[3] Appellees argue that the district court considered and rejected appellants' proffered justifications for the Van Ryn Rule. The district court, however, clearly stated that it was applying the *per se* rule and inserted a footnote at the end of its merits analysis noting that the cases cited by defendants in support of the application of the rule of reason were "distinguishable on the facts."

All of the cases relied upon by the district court in applying the *per se* rule were decided prior to the Supreme Court's decision in *Board of Regents*. After the Supreme Court's decision in *Board of Regents*, courts have applied the rule of reason to eligibility rules and frequently concluded that such rules do not violate antitrust law. *See, e.g., Tanaka*, 252 F.3d at 1063-64; *McCormack v. NCAA*, 845 F.2d 1338, 1343-44 (5th Cir. 1988); *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1122 (E.D. Cal. 2002). As discussed above, under the rule of reason, appellees have the initial burden of demonstrating significant anticompetitive effects within the relevant product and geographic markets. In the present case, the "product" made available by the OHL is amateur hockey. There are horizontal restraints that are necessary for product to exist, including rules such as those restricting the number of players and the ages of players. *See Board of Regents*, 468 U.S. at 101 (noting that what a sports league and its members "market . . . is competition itself. . . . Of course, this would be completely ineffective if there were no rules . . . to create and define the competition to be marketed."). It is difficult, however, to define the relevant market. "The term 'relevant market' encompasses notions of geography as well as product use, quality, and description." *Tanaka*, 252 F.3d at 1063 (quotation omitted). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Id.* (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999)).

Appellees do not define a relevant market in their complaint. Instead, they rely on the district court's statement in the order granting the preliminary injunction that "Plaintiff has defined the 'market' at issue here as the 'market for competition among OHL and CHL teams for player services' . . . and argues that the Rule limits competition among a group of players in such a market which has value to the NHL." According to the district court, "[b]ecause he is a 20 year old U.S. college hockey player, Aquino is excluded from this market." The market for player services in the OHL, however, is not a market that involves economic competition.

The OHL rules clearly limit the amount a player may be paid to schooling and a limited stipend. Instead, the effect on the market as defined by appellees is on athletic competition, which is not protected by the antitrust laws. *See Toscano*, 201 F. Supp. 2d at 1122 (citing *M&H Tire Co. v. Housier Racing Tire Corp.*, 733 F.2d 973 (1st Cir. 1984); *Mid-South Grizzlies v. Nat'l Football League*, 720 F.2d 772 (3d Cir. 1983)). The application of the Van Ryn Rule does not result in any economic injury to the "market for competition among OHL and CHL teams for player services," but merely substitutes one arguably less skilled player for another arguably more skilled player. While a player barred by the Rule is precluded from taking advantage of the benefits of playing on an OHL team, numerous other categories of players, including anyone under sixteen or over twenty, are similarly barred.

Appellants argue that the relevant market should not be confined to the OHL or the CHL, but rather that the relevant market should be defined as all organizations that compete for services of hockey players aged sixteen through twenty. According to appellants, in this market the proffered evidence demonstrates that the Van Ryn Rule is procompetitive. It is, however, appellees' duty to allege that the Van Ryn Rule has had significant anticompetitive effects within a relevant market. *See Tanaka*, 252 F.3d at 1063-64. Therefore, we decline to apply the rule of reason to a variety of possible "relevant markets" or proceed to examine the procompetitive effects of the Van Ryn Rule on a market that has not been alleged as a relevant market by appellees.

While appellees have established that the Van Ryn Rule might result in significant personal injury to Aquino, appellees have failed to present evidence of an injury to a definable market. The antitrust laws were enacted for "the protection of *competition*, not *competitors*." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (quotation omitted). Therefore, appellees have failed to establish that the Van Ryn Rule has a significant

anticompetitive effect on a relevant market. At this stage of the litigation, appellees have failed to establish that there is a substantial likelihood of success on the merits to warrant a preliminary injunction.[4]

### 2.  Irreparable Harm

Having determined that appellees have not established a substantial likelihood of success on the merits, we next examine whether Aquino will suffer irreparable harm if the preliminary injunction does not issue. The district court found that the preliminary injunction was necessary because there was sufficient evidence that Aquino could suffer irreparable harm in the absence of an injunction. The district court recognized that "[i]f [Aquino] is prohibited from attempting to try out for a place of the Ohsawa [sic] General's [sic] roster, whether his [sic] is retained on Oshawa's protected list or not, he may lose his last opportunity to develop critical skills in an environment that closely mimics the NHL, which could place him in an optimal position for his future NHL career." In addition, the district court noted that "[h]e will also lose the opportunity to obtain free agent status, thereby reducing his bargaining power with the NHL and the ability (as a free agent) to choose the best club, location and contract."

In appellees' supplemental reply in support of their motion for reconsideration of this court's grant of appellants' motion to stay the preliminary injunction, appellees stated that "[a]fter January 10, 2003, Aquino will be unable to play with any OHL team without a change to the OHL trade and roster

---

[4] The fourth factor in determining whether to grant a preliminary injunction asks whether the public interest is advanced in issuing the injunction. The district court found this factor weighed in favor of appellees because "the public interest is best served by promoting competition." Because appellees have failed to establish a likelihood that the Van Ryn Rule injures economic competition, however, the public interest no longer weighs in favor of granting a preliminary injunction.

deadline." (Appellees' Supplemental Reply in Support of Motion for Reconsideration ¶ 6 (citing Declaration of Anton Karl Thun ¶ 5)). The deadline was January 10, 2003. (Thun Declaration ¶ 4.) Moreover, appellees noted that "[a]s a practical matter, the OHL teams typically decide on their final roster and their overage players as early as possible. . . . It is very unlikely that more slots will remain open as January 10th approached [sic]." (Appellees' Supplemental Reply in Support of Motion for Reconsideration ¶ 7 (citing Thun Declaration ¶ 6)).

Due to this court's decision to grant appellants' motion to stay and our decision to deny reconsideration of that motion, the alleged irreparable harm to Aquino has already occurred. The practicalities of the sports world would prevent Aquino from later entering the OHL even if we affirmed the district court. Therefore, appellees' argument regarding irreparable harm is moot.

Similarly, several of appellants' arguments regarding irreparable harm are also no longer applicable. Appellants argued that allowing Aquino to play for Oshawa would affect the competitive balance within the league and the OHL's ability to compete for new talent and retain existing talent. Because Aquino will not be able to play in the OHL during the 2002-2003 season, these arguments have lost all force. Appellants also argue that if the OHL is enjoined from enforcing the Van Ryn Rule, current OHL players who are future overage players will be displaced. This argument is speculative and, as the district court recognized, other players from outside the OHL are able to compete for the slots as overage players. Therefore, at this stage in the proceeding there is an extremely low likelihood that either Aquino or appellants would suffer any additional harm based on our decision to reverse or affirm the district court's grant of the preliminary injunction.

### III.  CONCLUSION

For all the reasons set forth above, we reverse the district court's grant of a preliminary injunction and remand for further proceedings consistent with this opinion.