RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0434p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CARE HEATING & COOLING, INC.,

        *Plaintiff-Appellant,*

    *v.*

AMERICAN STANDARD, INC., d/b/a/ Trane; and BUCKEYE
HEATING & AIR CONDITIONING CO.,

        *Defendants-Appellees.*

Nos. 04-4080/4193

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00271; 04-00267—Gregory L. Frost, District Judge.

Submitted: September 22, 2005

Decided and Filed: November 2, 2005

Before: SILER and SUTTON, Circuit Judges; SHARP, District Judge.[*]

---

**COUNSEL**

---

**ON BRIEF:** Brian E. Dickerson, James G. Vargo, MAGUIRE & SCHNEIDER, Columbus, Ohio, for Appellant. Michael J. Canter, Scott A. Kossoudji, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, Walter W. Reckless, SHUMAKER, LOOP & KENDRICK, Columbus, Ohio for Appellees.

---

**OPINION**

---

SILER, Circuit Judge. Plaintiff Care Heating & Cooling, Inc. ("Care") instituted this action against American Standard, Inc., otherwise known as Trane, and Buckeye Heating & Air Conditioning Co. ("Buckeye") for alleged violations of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, arising from Trane's refusal to approve Care as an authorized dealer of Trane's heating and cooling equipment systems. The district court for the Southern District of Ohio dismissed Care's action for failure to state a claim. Because we find that Trane's actions do not constitute violations of section 1 of the Sherman Act, we **AFFIRM**.

---

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

1

## I. BACKGROUND

Trane is a manufacturer and distributor of heating and cooling (HVAC) equipment, doing business in Ohio. However, Trane does not install its own HVAC equipment. Rather, it selects dealers who are then authorized to sell and service Trane equipment as "approved" contractors. Two such potential contractors, both sellers and servicers of HVAC equipment, are Buckeye and Care. Buckeye is an authorized Trane dealer; Care, however, is not.

Both Care and Buckeye are subcontractors that submit bids to customers such as housing developers to supply, install, and service HVAC systems. Some housing developers specifically request Trane equipment. In order for a subcontractor to supply and install Trane products, the subcontractor first must obtain a license from Trane. Care has unsuccessfully attempted to obtain such a license from Trane, thereby preventing it from selling and servicing Trane equipment. Several builders have exclusive use agreements with Trane; Care will not win the contracts with these builders unless it obtains the right to use Trane goods. Care alleges that Trane and Buckeye have conspired to prevent Care from competing with Buckeye for HVAC installation work, and, as a result, Care cannot expand its business to compete with Buckeye.

Care originally sued Trane and Buckeye alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and Ohio's Valentine Act, Ohio Revised Code § 1331.01 et seq.[1] The district court granted both defendants' motions to dismiss due to Care's failure to state a claim upon which relief could be granted.

## II. DISCUSSION

This court reviews *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *P.R. Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (citing *Valassis Commc'ns v. Aetna Cas. and Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996)).

Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Recognizing that nearly every contract binding parties to an agreed course of conduct amounts to some sort of "restraint of trade," the Supreme Court has limited the restrictions of section 1 to bar only "unreasonable restraints." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003), *aff'd*, 2005 FED App. 0344P (6th Cir.) (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 98 (1984)).

Two analytical approaches have developed to determine whether a defendant's conduct unreasonably restrains trade: the *per se* rule and the rule of reason. *Id.* at 718. The *per se* rule identifies certain practices that completely lack redeeming competitive rationales. *Id.* (internal citations omitted); *see also Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988) ("[P]er se rules are appropriate only for conduct that is manifestly anticompetitive, that is, conduct that would always or almost always tend to restrict competition and decrease output." (citations and quotations omitted)). If a court determines that a practice is illegal *per se*, further examination of the practice's impact on the market or the procompetitive justifications for the practice is unnecessary for finding a violation of antitrust law. *NHL Players' Ass'n*, 325 F.3d at 718.

The rule of reason, however, instructs a court to examine both the history of the restraint and the restraint's effect on competition. *Id.* Rule of reason analysis employs a burden-shifting framework:

---

[1] Ohio's antitrust statute, the Valentine Act, was modeled after the Sherman Act, and the Ohio Supreme Court has interpreted the Valentine Act in light of federal decisions construing the Sherman Act. *See C.K. & J.K., Inc. v. Fairview Shopping Ctr.*, 407 N.E.2d 507, 509 (1980).

First, the plaintiff must establish that the restraint produces significant anticompetitive effects within the relevant product and geographic markets. [Then,] [i]f the plaintiff meets this burden, the defendant must come forward with evidence of the restraint's procompetitive effects to establish that the alleged conduct justifies the otherwise anticompetitive injuries. [Finally,] [i]f the defendant is able to demonstrate procompetitive effects, the plaintiff then must show that any legitimate objectives can be achieved in a substantially less restrictive manner.

*Id*. (internal citations and quotations omitted).

There is an automatic presumption in favor of the rule of reason standard. *Bus. Elecs.*, 485 U.S. at 726; *see also Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977) ("Since the early years of this century a judicial gloss on [the language of section 1 of the Sherman Act] has established the 'rule of reason' as the prevailing standard of analysis") (citing *Standard Oil Co. v. United States*, 221 U.S. 1 (1911)). Therefore, the *per se* rule should be applied only in "clear cut cases" of trade restraints that are so unreasonably anticompetitive that they present straightforward questions for reviewing courts. *NHL Players Ass'n*, 325 F.3d at 718 (citing *Sylvania*, 433 U.S. at 49-50).

Courts have identified two major types of antitrust conspiracies to restrain trade: horizontal and vertical. *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988). Horizontal conspiracies involve agreements among competitors at the same level of market structure to stifle trade, such as agreements among manufacturers or among distributors to fix prices for a given product, and therefore may constitute *per se* violations of antitrust law. *Id.*; *see also Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 131 (2d Cir. 1978). Vertical conspiracies, on the other hand, involve agreements among actors at different levels of market structure to restrain trade, "such as agreements between a manufacturer and its distributors to exclude another distributor from a given product and geographic market." *Crane & Shovel Sales Corp.*, 854 F.2d at 805.

Vertical distribution restraints are to be tested under the rule of reason. *Sylvania*, 433 U.S. at 57-58 (overruling *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365 (1967)). Unlike many horizontal agreements, such as group boycotts, price cartels, and monopolies, that are entirely void of redeeming competitive value and therefore present "clear cut cases," vertical restrictions possess the "redeeming virtue" of promoting interbrand competition by permitting the manufacturer to achieve certain efficiencies in the distribution of his products. *Id*. at 54. Thus, where a plaintiff alleges a vertical restraint of trade, the rule of reason applies. *Crane & Shovel Sales Corp.*, 854 F.2d at 806.

### A.  No *per se* violation

Care urges this court to find a *per se* violation of antitrust law on the facts pled. However, the conduct complained of by Care evidences only a vertical agreement between Trane and Buckeye; thus, no *per se* violation can exist.

Here, Care complains that Trane's refusal to add it to its list of approved contractors resulted from a continuing agreement between Trane and Buckeye to prevent Care from expanding its business and competing with Buckeye. Such an agreement, between the manufacturer, Trane, and one of its distributors, Buckeye, satisfies the test for a vertical restraint on trade. The district court correctly noted that this conduct is *per se* legal, because a "'manufacturer has a right to select its customers and refuse to sell its goods to anyone, for reasons sufficient to itself.'" *Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*, 691 F.2d 241, 243 (6th Cir. 1982) (citations omitted). Trane need not provide justification for its refusal to approve Care. Rather, Care is required to establish the unreasonableness of the alleged trade restraint. *NHL Players' Ass'n*, 325 F.3d at 718.

Care strenuously argues that the agreement between Trane and Buckeye should be classified as a *per se* violation of antitrust law because "when viewed as a whole, [it] is so destructive of free competition,

without providing any redeeming benefit, that its illegality should be conclusively presumed." However, the weight of authority mandates a different result. *See* Department of Justice, Vertical Restraints Guidelines, § 2, 50 Fed. Reg. 6263 (1985) (no literal or blind application of *per se* rules when dealing with vertical restraints, because nonprice vertical restraints rarely tend to restrict competition and decrease output). Furthermore, Care itself concedes that the agreement does not fall into one of the existing categories of *per se* violations and that the agreement is a vertical restraint. Because Care alleges a vertical restraint, the rule of reason must be applied to assess the legality of Trane's and Buckeye's actions.

### B. Failure to state a claim under the rule of reason

Rule of reason analysis requires the plaintiff to prove (1) that the defendant(s) contracted, combined, or conspired; (2) that such contract produced adverse anticompetitive effects; (3) within relevant product and geographic markets; (4) that the objects of and conduct resulting from the contract were illegal; and (5) that the contract was a proximate cause of plaintiff's injury. *Int'l Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir. 1989) (citing *Crane & Shovel Sales Corp.*, 854 F.2d at 805).

It is undisputed that Trane and Buckeye "contracted." Care also meets the relevant geographic market requirement. It is essentially the area of actual or potential competition between the parties involved in the case. *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 734 F.2d 1157, 1167 (6th Cir. 1984) (internal citation and quotations omitted). Here, Care and Buckeye either potentially or actually compete for HVAC installation contracts with builders in the Central Ohio area. Thus, the first and third prongs of the analysis are satisfied.

Care, however, does not fare as well with respect to the second, fourth, and fifth prongs of the rule of reason test. Regarding the second prong, because the Sherman Act was intended to protect competition and the market as a whole, not individual competitors, *NHL Players' Ass'n*, 325 F.3d at 720 (citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990)), the foundation of an antitrust claim is the alleged adverse effect on the market. Care is unable to establish any adverse effect on the market as a whole. Although Care alleges that it was unable to secure a contract with Joshua Homes, and that Trane's agreement with Buckeye prevented Care from expanding its business to compete with Buckeye, these results affected Care alone. Individual injury, without accompanying market-wide injury, does not fall within the protections of the Sherman Act. *See Dunn & Mavis*, 691 F.2d at 243-44 (holding that a complaint which fails to allege facts establishing that defendant's conduct had any significant anticompetitive effect on the market fails to state an antitrust claim). Because Care has not sufficiently alleged adverse effects on the market, Care has failed to satisfy the second prong of the rule of reason analysis.

The fourth prong requires plaintiff to prove that the objects of and conduct pursuant to the defendants' contract were illegal. *Int'l Logistics Group*, 884 F.2d at 907. The analysis set forth above established and underscored that the Sherman Act has been read narrowly to prohibit only *unreasonable* restraints on trade. *Bd. of Regents of Univ. of Okla.*, 468 U.S. at 98. Whether the agreement between Trane and Buckeye unreasonably restrains trade must be proved by the pleading of sufficient facts by Care, but Care neglected to prove the existence of such illegality with sufficient facts. As a result, it failed to satisfy the fourth prong of the analysis.

The fifth and final prong of the rule of reason test requires Care to prove that it suffered an antitrust injury as a result of defendants' contract or conspiracy. In *In re Cardizem CD Antitrust Litigation*, 332 F.3d 896, 909 (6th Cir. 2003), this court defined an "antitrust injury" as one proximately caused by defendants' allegedly illegal conduct and "of the type the antitrust laws were intended to prevent." Because protecting competition is the *sine qua non* of the antitrust laws, a complaint alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury. *Crane & Shovel Sales Corp.*, 854 F.2d at 807. Care failed to satisfy the fifth prong of the rule of reason analysis. Therefore, Care failed to state a violation of relevant antitrust law.

**AFFIRMED**.