RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CITY OF OLMSTED FALLS, OHIO, and MARVIN
HIRSCHBERG,

        *Plaintiffs-Appellants,*

    *v.*

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY, et al.,

        *Defendants-Appellees.*

No. 04-3720

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-02210—Patricia A. Gaughan, District Judge.

Argued: July 21, 2005

Decided and Filed: January 24, 2006

Before: KENNEDY, CLAY, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Barbara E. Lichman, CHEVALIER, ALLEN & LICHMAN, Costa Mesa, California, for Appellants. John A. Bryson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Barbara E. Lichman, Berne C. Hart, CHEVALIER, ALLEN & LICHMAN, Costa Mesa, California, Kevin T. Roberts, ROBERTS LAW FIRM, Cleveland, Ohio, for Appellants. John A. Bryson, Andrew J. Doyle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

## OPINION

---

KENNEDY, Circuit Judge. This suit stems from a challenge to a "dredge and fill" permit issued by Corps Defendants[1] pursuant to Section 404 of the Clean Water Act, Title 33 U.S.C. § 1344 (Section 404) by the City of Olmsted, a down-river municipality, and a private citizen who opposed the City of Cleveland's expansion of Hopkins International Airport. The expansion project called

---

[1]The Department of the Army; Thomas E. White, the Secretary of the Army; the Army Corps of Engineers; and Glen R. Dewillie, the District Engineer for the Army Corps of Engineer's Buffalo District, all have a hand in the permitting process. This opinion will refer to them collectively as Corps Defendants.

for a new runway, which required the filling and culverting of "5,400 linear feet of Abram Creek, the filling of 2,500 linear feet of Abram Creek tributaries, and the filling of 87.85 acres of wetlands." Joint Appendix at 321 (J.A.)  The Clean Water Act not only requires a permit from Corps Defendants, it also requires a certification from the state involved, in this case, Ohio, that the state's environmental requirements have been met.  The City of Cleveland had, therefore, applied to the Ohio Environmental Protection Agency (OEPA) for state certification as required by Title 33 U.S.C. § 1341 (Section 401).  In other litigation, the City of Cleveland was dealing with the United States Environmental Protection Agency (USEPA) and the OEPA on matters relating to permits for run-off from the existing airport as well as other issues related to the expansion.

## BACKGROUND

Before beginning any project that requires a "discharge of dredged or fill material into the navigable waters [of the United States]" a party must apply for a permit.  33 U.S.C.A. § 1344.  This permit is termed a "dredge and fill" permit.  In order to obtain a dredge and fill permit under Section 404, an applicant must first comply with Section 401(a)(1):

> Any applicant for a Federal License or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State, in which the discharge will comply with [certain provisions] of this title . . . .  If the State . . . fails or refuses to act on a request for certification within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application.  No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the proceeding sentence . . . .

33 U.S.C. § 1341(a)(1).

The relevant regulation governing procedures to be taken by the Corps Defendants in processing permits requiring a Section 404 permit provides, in part, that

> [n]o permit will be granted until required certification has been obtained or has been waived.  A waiver may be explicit, or will be deemed to occur if the certifying agency fails or refuses to act on a request for certification within sixty days after receipt of such a request unless the district engineer determines a shorter or longer period is reasonable for the state to act . . . .

33 C.F.R.§ 325.2(b)(1)(ii).

In accordance with its obligations under federal environmental statutes and regulations, the City of Cleveland sought OEPA certification of its project pursuant to Section 401.  After issuing comments that resulted in the City of Cleveland filing a revised Section 401 application, the OEPA held hearings and expressed further concerns related to the environmental impact of the expansion on Abram Creek.  Eventually the OEPA expressly waived its authority to act on the Section 401 application.

Corps Defendants then conducted a review of the project.  This review requires a balancing of "a number of economic and environmental factors," *Town of Northfolk v. United States Army Corps of Eng'rs.*, 968 F.2d 1438, 1454 (1st Cir. 1992), including "evaluating the probable impacts

. . . of the proposed activity and its intended use on the public interest,"[2] 33 C.F.R. § 320.4(a)(1). During its review, Corps Defendants weigh "[t]he benefits which reasonably may be expected to accrue . . . against [the project's] reasonably foreseeable detriments."[3] *Id.* Corps Defendants issued the Section 404 permit to the City of Cleveland.[4]   The permit required that the City of Cleveland undertake certain mitigating activities to offset the environmental degradation of the project. The district court described the mitigation activities as follows:

> Preserve 1070 linear feet of Abram Creek downstream of the Airport;
> Provide $2 million toward preserving 3600 linear feet of Abram Creek upstream of the Airport;
> Restore 265 acres of wetlands located in Lorain County;
> Restore 5000 linear feet of the Black River;
> Enhance 12,400 linear feet of Doan Brook;
> Provide $682,000 toward the restoration of 3,264 linear feet of Woodiebrook Creek;
> Provide $600,000 toward the preservation of 4,707 linear feet of Spring Brook; and
> Provide $500,000 toward the preservation of 3,000 linear feet of Elk Creek.

(J.A. at 322).  Construction began two days after the permit was issued on May 20, 2001.

Plaintiffs filed suit against the USEPA, the then head of the USEPA, the Regional Administrator for Region Five of the USEPA, the Corps Defendants, the City of Cleveland, the Mayor of the City of Cleveland, and ten Doe defendants. Their complaint alleged various violations of the Clean Water Act, asked the district court to set aside the Section 404 Permit, requested an injunction and declaratory relief, and sought an order compelling compliance with Section 401 Certification.  In particular, Plaintiffs complained that Corps Defendants improperly relied on the OEPA's waiver of the Section 401 Certification.  Plaintiffs also argued that the type and quantity of mitigation proposed by the City of Cleveland was inadequate and that the proposed permit violated various federal and state regulations, including the so-called federal antidegradation rule. Plaintiffs dismissed the City of Cleveland and the Mayor of the City of Cleveland in their first amended complaint.

The district court, in two different opinions, dismissed portions of Plaintiffs' complaint and granted judgment on the administrative record to Corps Defendants on the remainder of the complaint.  In its first opinion, after dismissing Defendant USEPA and all parties related to USEPA for lack of subject matter jurisdiction, the district court determined that Corps Defendants were entitled to rely on the waiver by OEPA with respect to compliance with Ohio's requirements, or in the alternative, that Plaintiffs failed to support a claim that Corps Defendants acted arbitrarily, capriciously, or contrary to law in relying on the waiver.

In its second opinion, the district court granted judgment on the administrative record to all remaining defendants.  The district court determined that 40 C.F.R. § 131.12, or as Plaintiffs term it, the federal antidegradation rule, applies to states only.  As such, the district court held that the federal antidegradation rule was inapplicable to Corps Defendants.  Second, the district court found

---

[2]In this case, the airport needed to add new runways in order to accommodate larger planes, diminish airport congestion, and enhance airport safety. (J.A. at 764-777.) Corps Defendants balanced these important public interest goals against the environmental harm caused by the destruction of a portion of Abram Creek.

[3]Additional criteria applicable to CWA section 404 permits are set forth at 40 C.F.R. pt. 230.

[4]Plaintiffs appealed the OEPA's waiver, and the Ohio Environmental Review Appeals Commission ruled that the OEPA could not waive its authority to act under Ohio law.  An Ohio state court later invalidated that holding due to a lack of standing.

that it was neither arbitrary nor capricious for Corps Defendants to use compensatory mitigation rather than avoidance mitigation and mitigation by minimization of impacts on existing uses. The district court also found that Corps Defendants did not act in an arbitrary or capricious manner when they concluded that the proposed project would not sufficiently degrade the waters of the United States, as prohibited by 40 C.F.R. § 230.10(c). Additionally, the district court found that Corps Defendants did not act arbitrarily or capriciously when they determined that granting the permit would not violate state water quality standards under 40 C.F.R. § 230.10(b)(1). Finally, the district court refused to expand the record and consider the Water Quality Standards Handbook (handbook) because it determined that the handbook would not aid it in reaching a decision.

On appeal, Plaintiffs challenge the district court's rulings in several important respects. First, Plaintiffs argue that the district court erred in failing to apply 40 C.F.R. § 131.12(a) (the federal antidegradation rule) in granting judgment on the administrative record, because 40 C.F.R. § 131.12(a) mandates that existing uses in the stream must be maintained and protected. Second, Plaintiffs dispute the district court's interpretation of federal regulations and the Memorandum of Agreement Between the Department of the Army and the Environmental Protection Agency entitled The Determination of Mitigation Under the Clean Water Act Section 404(b)(1) Guidelines (MOA) and argue that it was improper for Corps Defendants to use compensatory mitigation rather than avoidance and minimization of impacts on existing uses mitigation. Third, Plaintiffs challenge the district court's dismissal of a portion of their complaint, arguing that Corps Defendants could not rely on OEPA's waiver. They also argue that the permit was improperly issued because of the reliance on that waiver. Finally, Plaintiffs argue that the district court should have granted their motion to supplement the record with the handbook. They contend that the district court should have considered that document because of the guidance it provides in interpreting USEPA regulations.

## ANALYSIS

### A.    Mootness

Because the airport expansion project appeared to be complete at the time of our review, we directed both parties to file letter briefs on whether Plaintiffs' claims were moot. Both parties argue that despite the fact that construction on the project and the filling of Abram Creek are complete, the issues raised by Plaintiffs are not moot, because should Plaintiffs prevail in their suit, the permit issued by the Corps Defendants would have to be invalidated and another permitting process would be required. Because a live controversy exists with respect to the permit itself, we agree that the issues raised in Plaintiffs' complaint are not moot and that we may address all aspects of their appeal.

### B.    Reliance on the OEPA waiver

Plaintiffs argue that under Ohio law, the OEPA cannot issue a Section 401 waiver and that the Corps Defendants were aware of that fact. The district court dismissed this portion of Plaintiffs' complaint for failure to state a claim upon which relief could be granted. "This court reviews de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Care Heating & Cooling, Inc. v. American Standard, Inc.,* 427 F.3d 1008, 1012 (6th Cir.2005) (citing *P.R. Diamonds, Inc. v. Chandler,* 364 F.3d 671, 680 (6th Cir.2004)).

We agree with the district court that Corps Defendants could properly rely on OEPA's waiver in this case. If Corps Defendants cannot rely on the state agency to properly follow its own laws and regulations with respect to issuing waivers, the Section 401 waiver procedure would, in effect, require Corps Defendants to engage in an analysis of each states' rules and regulations on the issuing of Section 401 waivers, come to an independent assessment as to whether the state agency

followed those rules on issuing Section 401 waivers, and, if Corps Defendants determined that they did not follow them, fail to grant a permit despite an explicit waiver by the state. Such a procedure, in addition to being cumbersome and duplicative of effort, would undermine the role that state environmental agencies play in the Section 401 process. It would also contravene the express language of the federal statute section which provides not only for express waivers by a state, but also for waivers by silence. *See* 33 U.S.C. § 1341(a)(1).

C.       Issues decided on the agency record

We now address the issues the district court decided on the agency record. Because the Clean Water Act does not articulate its own standard of review, we review agency action pursuant to the Administrative Procedures Act. *See, e.g., Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997). We review agency actions to see if they were arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). *See Slater*, 120 F.3d at 632. We accord deference to the agency's views, but we still conduct "a thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 415 (1971) (abrogated on other grounds).

1.       Federal Antidegradation Rule

First, Plaintiffs argue that the Corps Defendants erred in issuing a permit without first deciding whether the federal antidegradation rule was satisfied. The federal antidegradation rule requires states to develop an antidegradation policy. 40 C.F.R. §§ 131.1, 131.12(a). We agree with the district court that the federal antidegradation rule only places obligations on states, not on Corps Defendants. By its very terms, 40 C.F.R. § 131.12 requires that "State[s] shall develop and adopt . . . an antidegradation policy. . . " In fact, § 131.12 only places obligations on states. It does not mention any other actor but states. Corps Defendants cannot be liable for violations of this regulation when they have no obligations under it.

2.       Appropriate mitigation standard

Similarly, Plaintiffs' position on mitigation is incorrect. Plaintiffs argue that the USEPA has two different standards of mitigation, one for wetland fills and one for filling other bodies of water. Plaintiffs argue that compensatory mitigation is permissible for the former and that avoidance and minimization mitigation are the only permissible forms of mitigation for the latter. Plaintiffs rely on the MOA and federal regulations as supporting its position. No federal regulation, however, indicates that avoidance and minimization is the only permissible means to mitigate environmental impacts on streams or creeks. The MOA cited by plaintiffs for support of their theory is similarly unavailing. While the MOA does indicate that in the case of wetlands, "at a minimum, one for one functional replacement (i.e., no net loss of values)," is to be the rule, nowhere in the policy statement or the discussion of the types of mitigation does the MOA indicate that compensatory mitigation can only be used for wetlands. (J.A. at 651-53). Thus, the regulations and the MOA do not foreclose compensatory mitigation in all cases involving streams or creeks. Plaintiffs' assertions to the contrary are simply incorrect. Because compensatory mitigation is a permissible form of mitigation for environmental degradation of bodies of water such as Abram Creek, we agree with the district court that compensatory mitigation is an acceptable form of mitigation to offset the environmental degradation of streams and creeks under applicable federal environmental laws.

3.       The Corps Defendants' decision to issue a permit was not arbitrary or capricious.

The district court also properly addressed whether Corps Defendants' actions were arbitrary or capricious, both with respect to 40 C.F.R. § 230.10(c) and § 230.10(b)(1). Title 40 C.F.R. § 230.10(c) indicates that "no discharge of dredged or fill material shall be permitted which will cause or contribute to significant degradation of the waters of the United States." In this case, a

portion of Abram creek is replaced by a culvert. As such, absent mitigation of the harm, the environmental impact on the creek would be contrary to the regulation. But, we agree with the district court that in light of the significant compensatory mitigation discussed by Corps Defendants both with respect to Abram Creek itself as well as the other streams and wetlands in the watershed, the Corps Defendants' finding that the airport expansion will not cause or contribute to a significant degradation of the waters of the United States was neither arbitrary nor capricious.

We make this finding accepting Plaintiffs' contentions, as we must, that the permit results in significant degradation to this culverted portion of Abram Creek. Corps Defendants granted the Section 404 permit with the understanding that as compensation for the environmental degradation caused by the culvert project, the City of Cleveland would undertake several projects to preserve, improve, and protect other areas. It was neither arbitrary nor capricious for the Corps Defendants to balance the environmental harm caused by the project against the benefits of the proposed mitigation and find that, on balance, the project would not contribute to a significant degradation of the waters of the United States.

With respect to 40 C.F.R. § 230.10(b)(1), we agree with the district court that it was neither arbitrary nor capricious for Corps Defendants to grant the permit. Title 40 C.F.R. § 230.10(b) provides that "No discharge of dredged or fill material shall be permitted if it: (1) Causes or contributes, after consideration of disposal site dilution and dispersion, to violations of any applicable State water quality standard . . . ." Plaintiffs argue that the permit violates Ohio's antidegradation policy, thereby violating 40 C.F.R. § 230.10(b)(1). We disagree. The OEPA had engaged in extensive analysis and comment on the project. Comments made by OEPA representatives indicated that the mitigation agreed to by the City of Cleveland would exceed Ohio water quality standards. In particular, the district court referenced OEPA comments:

> . . . [L]et me point out that I have issued administrative orders to the City of Cleveland as part of the waiver process that will provide the extensive mitigation of wetland and stream impacts of this project. Far from abandoning the environment by waiving our Section 401 authority, OEPA will achieve via this administrative order far reaching mitigation projects that exceed regulatory authority.

(J.A. at 343-44.) The district court also pointed out that the Corps Defendants also took into account the mitigating fact that the permit required Cleveland to restore over 4000 linear feet of Abram Creek in determining that water conditions would improve. Because we can find no error in the Corps Defendants' conclusion that the quality of the water in Abram Creek would improve as a result of this project, nor can we find fault with the district court's reasoning with respect to the Corps Defendants' reliance on the OEPA as to the other mitigation as required by the permit, we cannot say that the Corps Defendants acted in an arbitrary or capricious fashion when they issued the permit.

4.        The handbook

Finally, with respect to the admission of the handbook, Plaintiffs do not explain, and after reading it, the court does not understand what relevance the handbook has to these proceedings. While it is true, as Plaintiffs note, that the handbook provides detailed discussion of antidegradation and water quality standards, that information does not aid Plaintiffs' arguments, nor would it have enhanced the district court's analysis or decision. As we have already mentioned, the antidegradation rules do not apply to Corps Defendants; they place obligations only on the states. Thus, a more detailed understanding of those rules is unnecessary. Similarly, a more detailed understanding of water quality standards would be useful only if this court accepted Plaintiffs' arguments that compensatory mitigation was an improper form of mitigation and derivatively that any decrease in water quality would result in a ground to revoke the permit. Consequently, because

it was neither arbitrary nor capricious for Corps Defendants to find that the level of compensatory mitigation proposed was adequate, it was unnecessary for the district court to consult the handbook. We affirm the district court in all respects.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.