NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0317n.06
Filed: May 4, 2009

No. 08-1590

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PARTNER & PARTNER, INC.,

    Plaintiff-Appellant,

       v.

EXXONMOBIL OIL CORPORATION; and
MICHIGAN FUELS, INC.,

    Defendants-Appellees.

On Appeal from the United
States District Court for the
Eastern District of Michigan
at Detroit

_____/

**Before:**    **GUY, GILMAN, and COOK, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Plaintiff Partner & Partner, Inc., appeals from the district court's decisions (1) granting summary judgment to defendants ExxonMobil Oil Corporation and Michigan Fuels, Inc., on the breach of contract, antitrust, unjust enrichment, and tortious interference with advantageous business relationships claims; and (2) denying plaintiff's motion to amend the complaint to assert new claims of fraudulent inducement and violation of the Michigan Franchise Investment Law (MFIL), MCLA § 445.1508. After review of the record and consideration of the arguments presented on appeal, we affirm.

**I.**

In 2000, plaintiff Partner & Partner, Inc., through its principal, Ali Bazzy, entered into a lease/franchise arrangement with ExxonMobil to operate a branded gas station located at 20001 Fenkell, Detroit, Michigan. Plaintiff leased the property and purchased branded gasoline directly from ExxonMobil under 2000 and 2002 Petroleum Marketing Practices Act (PMPA) Franchise Agreements, 15 U.S.C. §§ 2801-2806. The 2000 and 2002 PMPA Agreements expressly provided that neither those agreements nor the franchise relationship gave plaintiff an exclusive market or geographic area to sell branded gasoline or to conduct related businesses. ExxonMobil also specifically reserved the right to, in its sole discretion, open or continue stations, franchises, or related businesses at locations of its choice.

In 2004, ExxonMobil decided to leave the "direct served" market and move to a "distributor served" market for the Detroit area. ExxonMobil planned to terminate the direct dealer relationships—executing a written agreement with plaintiff to that effect—and offered to allow its direct-served dealers to purchase the leased gas stations from ExxonMobil and to continue to sell ExxonMobil branded gasoline under a new PMPA Agreement with one of three approved distributors. After a dealer meeting in early 2004, at which plaintiff contends assurances were given that newly branded stations would not be located within one mile of an existing station, plaintiff decided to purchase the station on Fenkell for $500,000 under the terms of a 2004 "Sales Agreement" with ExxonMobil, and it entered into a 2004 "PMPA Motor Fuels Dealer Franchise Agreement" with ExxonMobil's distributor McPherson Oil Company. Plaintiff agreed to a 99,000 gallon minimum monthly purchase requirement, and granted ExxonMobil a right to repurchase the station. Significantly, neither

the Sales Agreement with ExxonMobil, nor the PMPA Agreement with McPherson Oil, included provisions that granted plaintiff an exclusive market or geographic area to sell ExxonMobil branded gasoline. In turn, however, the PMPA Agreement between ExxonMobil and plaintiff's distributor included ExxonMobil's express reservation of the right to approve or not approve the branding of new stations at locations of its choice, including, specifically, locations in proximity to existing Mobil-branded stations.

Plaintiff's station competed at all times with a gas station called the Fenkell Stop Plus that was a "Fast Track" branded station located less than one mile away on Fenkell. In 2005, after plaintiff purchased the Mobil station it had been leasing, ExxonMobil approved the rebranding of the Fenkell Stop Plus as an Exxon-branded station to be supplied under a PMPA Agreement with Michigan Fuels, another of ExxonMobil's approved distributors. Plaintiff alleges that Michigan Fuels' principal Bilal Saad, who was distantly related to Bazzy, pursued the rebranding to "get back" at Bazzy for selecting McPherson Oil as plaintiff's distributor. ExxonMobil's territory manager Michael Britz testified that he had denied earlier requests by Michigan Fuels to rebrand the Fenkell Stop Plus as a Mobil station because it would not be fair to plaintiff.

Insisting that ExxonMobil had an internal one-mile policy, plaintiff relies on anecdotal evidence that two applications for rebranding were denied because of their proximity to an existing station and argues that we ought not consider evidence that there are other ExxonMobil stations located within one mile of each other in the Detroit area. Plaintiff alleged that approval of the rebranding was the result of misstatements and errors in the

application, including the incorrect statement that the Fenkell Stop Plus was located more than one mile from plaintiff's station. In short, plaintiff claims that Michigan Fuels' request was motivated by a desire to "get back" at Bazzy and was approved in violation of the alleged one-mile policy as "a favor" to someone at Michigan Fuels who had previously worked for ExxonMobil.

As soon as plaintiff learned that the Fenkell Stop Plus would become an Exxon station, plaintiff filed this action against ExxonMobil and Michigan Fuels alleging breach of contract, violations of federal and state antitrust laws, unjust enrichment, and tortious interference with advantageous business relationships.[1] After an opportunity to conduct discovery, ExxonMobil filed a motion for summary judgment and Michigan Fuels joined in ExxonMobil's motion. Plaintiff opposed summary judgment, and sought leave to file an amended complaint. For the reasons set forth in a written opinion and order entered March 31, 2008, the district court granted the defendants' motions, denied plaintiff's motion to amend, and entered judgment in favor of the defendants. This appeal followed.

## II.

### A.        Summary Judgment

We review the district court's decision granting summary judgment de novo. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to

---

[1]Plaintiff alleged that ExxonMobil was unjustly enriched because it retained an option to purchase the gas station if plaintiff failed to purchase the required amount of gasoline from its approved distributor. Because the parties stipulated that no unjust enrichment had occurred, the claim was dismissed. Plaintiff has abandoned this claim on appeal.

judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## 1.     Breach of Contract

Plaintiff maintains that the rebranding of the Fenkell Stop Plus was a breach of the oral assurances by ExxonMobil representatives that no new ExxonMobil-branded stations would be located within a one-mile radius of the plaintiff's station. The district court found that plaintiff could not prevail on this breach of contract claim because, as in *Hamade v. Sunoco, Inc.*, 721 N.W.2d 233 (Mich. Ct. App. 2006), evidence of the alleged oral promises was barred by Michigan's parol evidence rule. Without directly contesting this finding, plaintiff argues first, that the district court erroneously concluded that ExxonMobil was not bound by the 2004 PMPA Agreement between plaintiff and McPherson Oil. Plaintiff asserts—without any analysis—that although not a party to the 2004 PMPA Agreement, ExxonMobil was bound by that agreement because ExxonMobil had an agency relationship with McPherson Oil and had required plaintiff to enter into a new PMPA Agreement with an approved distributor as a condition of the Sales Agreement. This is beside the point, however, because the fact remains that neither the Sales Agreement between plaintiff and ExxonMobil, nor the new PMPA Agreement between plaintiff and McPherson Oil, granted plaintiff any exclusive territory or provided protection consistent with the alleged one-mile

rule. The promises plaintiff relies on were made orally and are not found in the written contracts that followed.[2]

Under Michigan's parol evidence rule, "[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Schmude Oil Co. v. Omar Operating Co.*, 458 N.W.2d 659, 663 (Mich. Ct. App. 1990). "A prerequisite to the application of this rule, however, is a finding that the parties intended the written instrument to be a complete expression of their agreement." *Id*. When the parties include an explicit integration or merger clause in a written contract, that clause is conclusive and parol evidence is not admissible to show that the agreement is not integrated unless the agreement is obviously incomplete on its face, which is not the case here, or in cases of fraud that invalidate either the integration clause or the entire contract including the integration clause. *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 418 (Mich. Ct. App. 1998).

The Sales Agreement, the only contract in force between plaintiff and ExxonMobil at the time, includes the following explicit integration clause:

---

[2]Conceding as much, plaintiff argues that it was nonetheless granted exclusive territorial protection for a one-mile radius by the *absence* of a provision expressly reserving ExxonMobil's right to allow branded stations at any location of its choice. On the contrary, the *omission* of what plaintiff calls the "no exclusive territory" provision is not the same as the *inclusion* of an affirmative grant of an exclusive territory. Indeed, to the extent plaintiff relies on the distributor/franchise relationship between ExxonMobil and McPherson, it cannot be ignored that ExxonMobil's PMPA Agreement with McPherson contained express reservation of ExxonMobil's right to approve branded stations at any location of its choice, including in close proximity to any Mobil-branded stations.

> This Contract, attached exhibits, and the offer letter from Seller, are intended by the parties to be the final, complete, and exclusive statement of their agreement. There are no oral understandings, representations, or warranties affecting the Contract, except as stated herein. No amendment, addition, modification or waiver of any provision of this Contract shall be effective unless it is in writing and is signed by both parties hereto.

Similarly, even if ExxonMobil were bound by the new PMPA Agreement between plaintiff and McPherson Oil, it contained a similar integration clause, including that: "THERE ARE NO ORAL UNDERSTANDINGS, REPRESENTATIONS OR WARRANTIES AFFECTING THIS AGREEMENT WHICH ARE NOT FULLY SET FORTH HEREIN OR IN THE ATTACHMENTS." These provisions are conclusive that the parties intended the written contracts to be fully integrated expressions of their agreements.

Plaintiff argued for admission of the parol evidence on the grounds that the oral promises fraudulently induced it to enter the written contracts. Although plaintiff's complaint did not assert a separate claim for fraud, plaintiff argued that it was fraudulently induced by the assurances that ExxonMobil would adhere to a one-mile policy to enter into written contracts that did not include any exclusive territorial protections. As the court in *Hamade* explained, although parol evidence is generally admissible to demonstrate fraud that, if proved, would render the contract voidable, "'fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract.'" 721 N.W.2d at 249 (quoting *UAW-GM*, 579 N.W.2d at 418). That is, if the contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that invalidates either the merger clause itself or the entire contract including the merger clause. *Id*.

In *Hamade*, which involved a similar dispute between the plaintiff gas station owner and the fuel supplier Sunoco, the court found that fraud claims were based solely on an oral representation by Sunoco that it would not authorize a new station within three to five miles of the plaintiff's station. Because the written contract did not incorporate this representation and contained an express integration clause, the court found that the alleged oral representation was nullified by the integration clause such that, if the integration clause was valid, fraud based on the representation would have no effect on the validity of the contract. *Id.* As in *Hamade*, plaintiff relies solely on alleged oral promises that ExxonMobil would adhere to an internal one-mile policy. But these alleged oral promises were nullified by the integration clause, and the alleged fraud would not invalidate either the integration clause itself or the entire contract. The district court did not err in concluding that parol evidence was not admissible and, therefore, that plaintiff could not prevail on its breach of contract claim.

### 2.    Tortious Interference

A claim of tortious interference with an advantageous business expectancy requires proof of (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship or expectancy, and (4) resulting damage to plaintiff. *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996). If the defendant's actions were

"motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Id*.

The district court dismissed this claim concluding, *inter alia*, that plaintiff did not have a valid expectation that no Exxon station would be opened nearby because it was based on alleged oral assurances that were not incorporated into the fully integrated written agreements. In addition, the district court found that the rebranding of the Fenkell Stop Plus was not evidence of improper motive or intent to interfere since there was no contract provision barring ExxonMobil from doing so. To be actionable, the intentional interference—here allowing new competition from a branded station—must have been improper, meaning "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984). Because plaintiff failed to demonstrate that the rebranding was improper interference with a legitimate business expectancy, summary judgment was proper.

### 3.    Federal Antitrust Claims

Plaintiff alleged that the decision to allow an Exxon station within one mile of plaintiff's station violated § 1 of the Sherman Act, which prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. This limitation has been interpreted to bar only unreasonable restraints on competition. *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005). Two analytical approaches have developed for evaluating whether a defendant's conduct

unreasonably restrains trade—the per se rule and the rule of reason—but we need not discuss the differences because plaintiff concedes that this case involves an alleged vertical conspiracy and must be analyzed under the rule of reason approach.

Vertical conspiracies involve agreements among actors at different levels of market structure to restrain trade, such as an agreement between a manufacturer and its distributors to exclude another distributor from the market. *Care Heating*, 427 F.3d at 1013. A vertical restraint is unlawful under the "rule of reason" analysis if plaintiff can prove:

> (1) that the defendant(s) contracted, combined, or conspired; (2) that such contract produced adverse anticompetitive effects; (3) within relevant product and geographic markets; (4) that the objects of and conduct resulting from the contract were illegal; and (5) that the contract was a proximate cause of plaintiff's injury.

*Id*. at 1014. Addressing the second prong, this court explained in *Care Heating*, that "the Sherman Act was intended to protect competition and the market as a whole, not individual competitors." *Id*. There, the defendant manufacturer of Trane heating and cooling equipment selected dealers who were exclusively authorized to sell and service Trane equipment. Plaintiff, a contractor that was not an approved Trane dealer, alleged that Trane and the authorized dealer Buckeye Heating conspired to prevent plaintiff from competing for HVAC installation work in the market they shared. The court held that this was insufficient to satisfy the second prong because the plaintiff failed to show an adverse effect on the market as a whole, explaining that:

> Although Care alleges that it was unable to secure a contract with Joshua Homes [which used only Trane products], and that Trane's agreement with Buckeye prevented Care from expanding its business to compete with Buckeye, these results affected Care alone. Individual injury, without

accompanying market-wide injury, does not fall within the protections of the Sherman Act.

*Id*. In addition, the court found that Care Heating had failed to prove either (1) that the objects of and conduct resulting from the authorized dealer contract between Trane and Buckeye were illegal; or (2) that Care suffered an *antitrust* injury, which is "one proximately caused by [the] allegedly illegal conduct and 'of the type the antitrust laws were intended to prevent.'" *Id*. (citation omitted). With respect to the latter, this court held that "[b]ecause protecting competition is the *sine qua non* of the antitrust laws, a complaint alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury." *Id*. at 1014-15.

Plaintiff alleged a vertical conspiracy between ExxonMobil and Michigan Fuels to rebrand the Fenkell Stop Plus as an Exxon station that took business from plaintiff's Mobil station less than one mile away. The district court concluded, as in *Care Heating*, that plaintiff had claimed only an individual injury and had not shown an adverse market-wide anticompetitive effect. Plaintiff complained that it suffered lost business as a result of increased competition from the new Exxon-branded station. Indeed, plaintiff's principal testified that it was hurt because the newly branded Exxon station lowered its prices. The district court also concluded, again as in *Care Heating*, that plaintiff failed to demonstrate that the objects of and conduct resulting from the rebranding agreement were illegal. We find, and plaintiff does not deny, that the loss of business plaintiff claims resulted from the rebranding represents a loss of business by plaintiff as an individual competitor.

Instead, plaintiff argues that the district court overlooked its contention that it also "stood in the shoes of a consumer" since it had a contractual obligation to purchase only branded gasoline, in minimum monthly quantities, from McPherson Oil. That is, plaintiff argues it has been restrained from buying gasoline from anyone else. The district court rejected this argument, finding that plaintiff had still not shown an injury to the market as a whole. On appeal, plaintiff offers no authority to overcome this conclusion and makes no showing that the restraint on its ability to purchase gasoline from another source presented an adverse market-wide effect.

### 4.    Michigan Antitrust Claims

Although plaintiff has argued its antitrust claims together, the district court recognized that the complaint asserted separate claims under the Michigan Antitrust Reform Act (MARA), MCLA §§ 445.772 and 445.773, which are modeled after § 1 (restraint of trade) and § 2 (monopoly) provisions of the Sherman Act, 15 U.S.C. §§ 1 and 2, respectively. As the district court concluded, plaintiff's MARA "restraint of trade" claims under § 445.772 fail for the same reasons that the "restraint of trade" claims fail under § 1 of the Sherman Act. *See* MCLA § 445.784(2) ("courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason").

Section 445.773 makes unlawful "[t]he establishment, maintenance, or use of a monopoly, or any attempt to establish a monopoly, of trade or commerce in a relevant market by any person, for the purpose of excluding or limiting competition or controlling, fixing, or

maintaining prices." Monopolization has two elements: the possession of monopoly power in the relevant market, and the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). For a claim of attempted monopolization, which plaintiff seems to be asserting here, plaintiff must prove (1) specific intent to monopolize, (2) anticompetitive conduct, and (3) a dangerous probability of success in achieving monopoly power. *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir. 1993). Market strength that approaches monopoly power (the ability to control prices and exclude competition) is a necessary element for showing a dangerous probability of achieving monopoly power. *Id*. The district court found that this claim failed as a matter of law because there was no evidence of intent, no evidence of anticompetitive conduct, and no showing that defendant had a dangerous probability of monopolization.[3]

On appeal, plaintiff argues that ExxonMobil monopolized the relevant market, the "stretch of Fenkell Road served by plaintiff's franchise," through the agreements that required plaintiff to buy a minimum quantity of branded gasoline from a single distributor. Relevant markets are generally not limited to a single manufacturer's products, but are composed of products that have reasonable interchangeability—*i.e.*, gasoline rather than ExxonMobil-branded gasoline. *See Brighton Optical, Inc. v. Vision Serv. Plan*, 422 F. Supp. 2d 792, 807 (E.D. Mich. 2006). If this were not the case, virtually every exclusive distributor relationship would be illegal. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d

---

[3]Bazzy testified that he did not know defendants' intent behind the rebranding, except that it was done as a favor to Michigan Fuels, which, in turn, wanted to get back at plaintiff for selecting McPherson Oil as its distributor.

430 (3d Cir. 1997). Further, plaintiff offered no evidence that ExxonMobil had the power to exclude competition from the market for gasoline. We affirm the district court's grant of summary judgment to defendants on this claim.

**B.    Motion to Amend**

Under Fed. R. Civ. P. 15(a)(2), leave to amend should be freely given "when justice so requires." Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). Delay alone is not a sufficient reason to deny leave to amend, but notice and substantial prejudice are critical factors in the determination. *Id*. When amendment is sought at a late stage, there is an increased burden to show justification for failing to move earlier. *Id*. The district court's denial of a motion to amend is reviewed for abuse of discretion, except to the extent that it is based on a legal conclusion that the amendment would not withstand a motion to dismiss. *Id*.

The district court found both that allowing the amendment after the close of discovery would prejudice defendants and that amendment would be futile because the new claims would not survive summary judgment. First, plaintiff sought to recharacterize the breach of contract claim as a claim for fraudulent inducement in an attempt to avoid the bar of the parol evidence rule. However, for the reasons discussed earlier, we find that the district court did

not err in finding that parol evidence was not admissible to prove fraudulent inducement in this case. *See Hamade*, 721 N.W.2d at 249.

Second, plaintiff alleged that defendants violated the Michigan Franchise Investment Law (MFIL), MCLA § 445.1508(2)(s), by failing to provide plaintiff, as franchisee, with a statement disclosing whether the franchisee would receive an exclusive territory. The district court found that this amendment would be futile because no franchise relationship existed between plaintiff and ExxonMobil. Plaintiff cannot deny that the franchise relationship with ExxonMobil was expressly terminated by written agreement, after which ExxonMobil had a distributorship contract with McPherson Oil. Rather, it was McPherson Oil, which is not a party to this case, that had a franchise agreement with plaintiff. Plaintiff asserts without development or citation to authority that ExxonMobil may be liable under the MFIL because McPherson Oil is the agent of ExxonMobil.

More fundamentally, as ExxonMobil argued, the agreement with McPherson Oil was not a "franchise" for purposes of the MFIL because plaintiff was not required to "pay, directly or indirectly, a franchise fee." MCLA § 445.1502(3)(c). A "franchise fee," in turn, is defined to mean "a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payment for goods and services . . . [except for] [t]he purchase or agreement to purchase goods, equipment, or fixtures directly or on consignment at a bona fide wholesale price." MCLA 445.1503(1). The court in *Hamade* recognized that minimum purchase requirements may constitute a "franchise fee" under the MFIL if the price charged is not a

bona fide wholesale price and there is a well-established market for such goods. 721 N.W.2d at 241-42. Although the district court did not reach this issue, it was raised in the district court and on appeal. As in *Hamade*, however, plaintiff has not attempted to show that the mandatory minimum gasoline purchases were not made at a bona fide wholesale price. Absent a showing that plaintiff paid a franchise fee, the MFIL does not apply and plaintiff cannot demonstrate a violation of the disclosure requirements.[4]

**AFFIRMED**.

---

[4]Although not asserted in the proposed amended complaint, plaintiff cites to the MFIL provision prohibiting fraud, directly or indirectly, in the offer, purchase, or sale of a franchise. MCLA § 445.1505. This court has held that the MFIL requires reasonable reliance, and that it is not reasonable to rely on oral promises that were not incorporated into the fully integrated written franchise agreement. *See Watkins & Sons Pet Supplies v. IAMS Co.*, 254 F.3d 607, 614 (6th Cir. 2001); *Cook v. Little Caesar Entrs., Inc.*, 210 F.3d 653, 659 (6th Cir. 2000).