976 F.2d 740
 145 L.R.R.M. (BNA) 2704
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Thomas M. COLLINS, Plaintiff-Appellant,
v.
NATIONAL BASKETBALL PLAYERS ASSOCIATION; Charles Grantham,
Defendants-Appellees.
 No. 92-1022.
 United States Court of Appeals, Tenth Circuit.
 Sept. 21, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Thomas Collins appeals a summary judgment order in favor of defendants-appellees National Basketball Players Association (NBPA) and Charles Grantham. On appeal, Collins contends that the district court misapplied the labor exemption to the antitrust laws. Collins further contends that the district court erred by granting summary judgment while there remain genuine disputes of material fact relating to the issues of waiver and estoppel. After reviewing the district court's opinion and the parties' briefs, we affirm.
 
 
 3
 On appeal, we review the grant of summary judgment de novo, using the same standards the district court applies. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of material fact is "genuine" if a reasonable jury could render a verdict for the nonmoving party. Liberty Lobby, 477 U.S. at 249; Deepwater Invests., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1113 (10th Cir.1991). When deciding whether an issue of material fact is genuine, we must accept all evidence and all reasonable inferences derived from that evidence in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 
 4
 The underlying material facts in this case are not in dispute and are set out in the district court's opinion. In summary, the NBPA is a labor union that the National Basketball Association (NBA) has recognized for over thirty years as the exclusive bargaining representative for all NBA players, pursuant to section nine of the National Labor Relations Act, 29 U.S.C. § 159. For over twenty years, the NBPA and the NBA have entered into collective bargaining agreements establishing the minimum salary an individual player must be paid, the maximum aggregate salary a team may pay all of its players, and other issues unique to professional sports. The NBPA, however, has always authorized the players or their individually selected agents to negotiate their individual compensation packages within the framework established by the collective bargaining agreements.
 
 
 5
 Player agents were unregulated before 1986. But in that year, in response to a growing number of player complaints about agent abuses--including violations of various fiduciary duties--the NBPA established the Regulations, a comprehensive system of agent certification. The Regulations permit only certified agents to represent NBPA members. The Regulations also establish the Committee, which is authorized to issue or deny certification of prospective player agents. The Committee may deny certification if it determines that the prospective agent has made a false statement of material fact in his application or that he has engaged in any conduct that significantly impacts on his credibility, integrity, or competence to serve in a fiduciary capacity. Any prospective agent whose application for certification is denied may appeal by filing a timely demand for final and binding arbitration.
 
 
 6
 Collins had been a player agent representing NBPA members since 1974. The Committee certified Collins as a player agent in 1986, the year the Regulations first took effect. However, Collins voluntarily suspended his activities as an agent during the pendency of a lawsuit filed by one of his clients, Kareem Abdul-Jabbar, and a corporation Abdul-Jabbar had established, Ain Jeem, Inc. Abdul-Jabbar alleged that Collins had breached a number of fiduciary duties when Collins mishandled Abdul-Jabbar's income tax returns, improvidently invested his money, mishandled his assets, and transferred funds from his accounts to the accounts of other players represented by Collins. The Ain Jeem lawsuit was settled in 1989, but in the interim the Committee had decertified Collins for violations of other regulations.
 
 
 7
 Collins reapplied for certification in 1990, and the Committee commenced an informal investigation into Collins' application. The Committee took testimony from both Collins and Abdul-Jabbar, and was provided with nonconfidential discovery material from the Ain Jeem suit. The Committee denied Collins' application because it found that Collins was unfit to serve in a fiduciary capacity on behalf of NBA players and that he had made false or misleading statements to the Committee during the investigation. It reached this conclusion after it found substantially all of Abdul-Jabbar's allegations to be true. The Committee informed Collins of his right to final and binding arbitration, but Collins did not demand arbitration and instead filed this lawsuit.
 
 
 8
 Before the district court, Collins claimed that the NBPA certification process violates the antitrust laws because it amounts to a group boycott. We agree with the district court's analysis of the labor and antitrust statutes and its conclusion that the statutory labor exemption from the Sherman Act permits the NBPA to establish a certification procedure for player agents. Specifically, we hold that the Regulations meet both prongs of the test established in United States v. Hutcheson, 312 U.S. 219 (1941), in which the Supreme Court held that labor unions acting in their self-interest and not in combination with nonlabor groups are statutorily exempt from Sherman Act liability. Id. at 232.
 
 
 9
 On appeal, Collins now acknowledges that the NBPA has the statutory authority to establish player agent regulations. But he maintains his attack on the Committee's decision to deny his certification because it was based in part on its finding that he had breached his fiduciary duty as an investment agent and money manager. He argues that his conduct outside of negotiations between players and their teams is not a legitimate interest of the union because it has no bearing on the union's interest in the wage scale and working conditions of its members.
 
 
 10
 The district court properly rejected this argument. The NBPA established the Regulations to deal with agent abuses, including agents' violations of their fiduciary duties as labor negotiators. It was entirely fair for the Committee to conclude that a man who had neglected his fiduciary duties as an investment agent and money manager could not be trusted to fulfill his fiduciary duties as a negotiator. The integrity of a prospective negotiating agent is well within the NBPA's legitimate interest in maintaining the wage scale and working conditions of its members.
 
 
 11
 Collins next contends that the district court erred in granting summary judgment because there still exists a genuine dispute over whether the NBPA intended to waive its statutory right to act as the exclusive bargaining agent of the NBA players. He argues that the fact that the NBPA permitted agents to negotiate individual salaries for over twenty years reasonably implies that the union intended to waive its exclusive right to bargain, and thereby waived its statutory exemption to the Sherman Act.
 
 
 12
 The district court was not in error because there is no genuine dispute over the NBPA's intent regarding its statutory exemption. " '[W]aiver is the intentional relinquishment of a known right.' " In re Sweet, 954 F.2d 610, 613 (10th Cir.1992) (quoting In re Garfinkle, 672 F.2d 1340, 1347 (11th Cir.1982)). A waiver of a right provided to a union by the labor statutes must be clear and unmistakable. Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708-09 (1983). Collins has presented no evidence that the NBPA intended to waive its right other than the fact that the union did not seek to regulate player agents until the abuses came to its attention in the mid-1980s. Because no jury could reasonably infer from this fact that the NBPA clearly and unmistakably intended to waive its exclusive right to bargain on behalf of its members, there is no genuine issue of material fact. See Liberty Lobby, 477 U.S. at 249-50; Deepwater Invests., 938 F.2d at 1113.
 
 
 13
 Finally, Collins contends that the district court erred in granting summary judgment because there still exists a genuine dispute over whether the NBPA estopped itself from failing to certify Collins as an agent. Collins argues that a reasonable jury could conclude that the NBPA's failure either to regulate agents for over twenty years or to inform him that it might someday regulate agents induced him to believe that it would never regulate agents.
 
 
 14
 The district court properly granted summary judgment because there is no genuine dispute over the factual elements of estoppel. The Tenth Circuit recently reiterated the four traditional elements of equitable estoppel:
 
 
 15
 (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.
 
 
 16
 Penny v. Giuffrida, 897 F.2d 1543, 1545-46 (10th Cir.1990) (citing Che-Li Shen v. INS, 749 F.2d 1469, 1473 (10th Cir.1984)). Collins has not established a genuine dispute over the third element because no reasonable jury could conclude that the NBPA intended to refrain from ever regulating agents or that Collins rightfully believed that the NBPA so intended.
 
 
 17
 For these reasons, we AFFIRM the district courts order granting summary judgment. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3