NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0544n.06

Case No. 22-3038

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 30, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROSEL C. HURLEY, III, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| NATIONAL BASKETBALL PLAYERS | ) | NORTHERN DISTRICT OF |
| ASSOCIATION & NATIONAL BASKETBALL | ) | OHIO |
| ASSOCIATION, | ) | |
| | ) | OPINION |
|     Defendants-Appellees. | ) | |

Before: SILER, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Lawyer Rosel C. Hurley III had designs on becoming an agent for players in the National Basketball Association. So he applied to take an exam the National Basketball Players Association requires for certification as an agent. The NBPA told Hurley that he was approved to take the exam, only to reverse course and reject his application days before the exam date. Hurley responded by filing an antitrust suit against the NBPA and the NBA. The district court dismissed the case for failure to state a claim. We now affirm.

**I.**

The NBPA is a non-profit corporation and labor organization within the meaning of the National Labor Relations Act. *See* 29 U.S.C. § 152(5). Its player agents are the exclusive

representatives for NBA players. But becoming an agent is far from a slam dunk. To represent an NBA player, a prospective agent must both pass an exam and be certified by the NBPA.

Hurley applied to take the exam. In his application, he disclosed that, at the time, his law license had been suspended by the Ohio Supreme Court. He also answered follow-up requests from the NBPA. The NBPA informed Hurley that he had been approved to take the online exam. But just two days before the exam date, the NBPA told Hurley that he would not be allowed to do so.

Hurley cried foul. According to him, the reason given for his application's denial—his disciplinary history—was pretextual. In Hurley's view, the NBPA and NBA, for reasons unstated, did not want him to be an agent. So he filed suit against the two associations. The gist of Hurley's complaint was that defendants violated the Sherman Act, 15 U.S.C. §§ 1 & 2. Defendants' actions, Hurley alleged, "would cause a reasonable person to believe that the [NBPA was] acting in concert with and at the behest of a non-labor member or group, [the NBA,] in order to ensure [Hurley's] exclusion from the marketplace the [d]efendants completely control." Complaint, R. 1, PageID# 6 ¶ 14.

The district court granted defendants' motions to dismiss the complaint. *See* Fed. R. Civ. P. 12(b)(6). It viewed the NBPA's alleged actions as statutorily exempted from the Sherman Act, and the NBA's purported actions as nonstatutorily exempted from the same. Hurley timely appealed.

## II.

Hurley's appeal boils down to one issue: whether he proffered viable Sherman Act claims. In essence, Hurley believes that the NBPA acted in concert with the NBA to deny him the ability to take the player agent exam in violation of sections 1 & 2 of the Sherman Act. We review the

district court's dismissal of those claims de novo, meaning we "accept as true all well-pleaded allegations in the complaint and ask whether those allegations plausibly suggest an entitlement to relief." *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 593 (6th Cir. 2022).

Basic principles of antitrust law foreclose Hurley's claims. Start with his claim against the NBPA. Generally speaking, the Sherman Act prohibits monopolizing or unreasonably restraining trade and commerce. 15 U.S.C. §§ 1 & 2. But Congress did not dispatch the Act to cover all actors. One example is labor unions: Congress broadly exempted them from the Act's prohibitions. Clayton Act § 20, 15 U.S.C. § 17 ("Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor . . . organizations . . . , or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws."); *see also H.A. Artists & Assocs. v. Actors' Equity Ass'n*, 451 U.S. 704, 713–16 (1981). In view of this broad exception, we see no basis for imposing antitrust liability against the NBPA alone. *See also Indep. Sports & Ent. v. Fegan*, No. CV 17-02397-AB, 2017 WL 2598550, at *6 (C.D. Cal. May 30, 2017) (recognizing "that the NBPA is exempt from the Sherman Act and thus can monopolize the representation of basketball players"); *Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1475 (D. Colo. 1991) ("The NBPA Regulations . . . are exempt from antitrust law."), *aff'd*, 976 F.2d 740, 1992 WL 236919, at *2 (10th Cir. 1992) (unpublished table decision) ("[T]he statutory labor exemption from the Sherman Act permits the NBPA to establish a certification procedure for player agents.").

Hurley fares no better by alleging conspiratorial conduct between the NBPA and the NBA. The NBPA, says Hurley, "was acting in concert with a non-union member to boycott [Hurley]

from taking the NBPA Agent Exam." Blue Br. at *10. Here again, Hurley confronts the statutory exemption for unions, albeit in an extended fashion. Drawing upon the spirit of the union exemption, the Supreme Court, through "nonstatutory" means, *Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union No. 100*, 421 U.S. 616, 622 (1975), has similarly "excluded from antitrust scrutiny" "[a]ny anticompetitive effect of a properly bargained collective bargaining agreement." *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 474 (6th Cir. 2005). It did so in view of "the congressional policy favoring collective bargaining under the NLRA and the congressional policy favoring free competition in business markets." *Connell Constr.*, 421 U.S. at 622; *see also Plymouth Whalers Hockey Club*, 419 F.3d at 474.

Applied in this setting, that exception encompasses the NBPA's agreement with the NBA. By all accounts, the parties' collective bargaining was standard fare, done for the purpose of protecting players from unscrupulous agent behavior. *Collins*, 850 F. Supp. At 1478–79. In the absence of plausible allegations that the bargaining was not conducted in self-interested ways, there is little basis to find liability under the Sherman Act. *United States v. Hutcheson*, 312 U.S. 219, 232 (1941); *Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 689–90 (1965) (exempting restrictions obtained "through bona fide, arm's-length bargaining in pursuit of their own labor union policies, and not at the behest of or in combination with nonlabor groups"); *Brown v. Pro Football, Inc.*, 518 U.S. 231, 250 (1996) (exempting conduct that "grew out of, and was directly related to, the lawful operation of the bargaining process[,] involved a matter that the parties were required to negotiate collectively[, and] concerned only the parties to the collective-bargaining relationship").

True, as Hurley notes, the exemption has not been extended to situations where unions are "aid[ing] non-labor groups to create business monopolies and to control the marketing of goods and services." *Allen Bradley Co. v. Loc. Union No. 3, Int'l Bhd. Of Elec. Workers*, 325 U.S. 797, 808 (1945); *cf. Hutcheson*, 312 U.S. at 232 ("So long as a union acts in its self-interest and does not combine with non-labor groups, the licit and the illicit under [§ 17] are not to be distinguished by any judgment regarding the wisdom or unwisdom, the rightness or wrongness, the selfishness or unselfishness of the end of which the particular union activities are the means." (footnote omitted)). *See also Conn. Ironworkers Emps. Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 102–03 (2d Cir. 2017). Yet Hurley points to nothing that would suggest that is what happened here. All he can muster is the assertion that "a reasonable person would assume that," in view of the NBPA's eleventh-hour reversal and ensuing denial of his application, the NBPA and NBA must have impermissibly conspired to restrain trade. We need not credit this conclusory statement as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Nor would it make sense to do so, in view of the statutory and case law backdrop we write against. After all, saying that the mere fact that parties entered into a standard collective bargaining agreement constitutes improperly "aid[ing] non-labor groups to . . . control the marketing of goods and services," *Allen Bradley Co.*, 325 U.S. at 808, disregards the longstanding balance struck between competing congressional policies. *See Connell Constr.*, 421 U.S. at 622. It would likewise elevate the exception to the point where it swallows the rule.

All told, the bargained agreement between the NBPA and NBA is protected from Hurley's antitrust suit, even if he could identify anticompetitive consequences arising out of it. *See Plymouth Whalers Hockey Club*, 419 F.3d at 474.

5

\*     \*     \*     \*     \*

Some final housekeeping matters are in order.  One, because the labor exemptions to antitrust laws preclude Hurley's Sherman Act claims, we need not reach the other challenges to those claims.  Two, to the extent Hurley argues that the NBPA violated the Railway Labor Act, 45 U.S.C. §§ 151–188, those arguments are forfeited, as he did not make them before the district court. *Sheet Metal Workers' Health & Welfare Fund of N.C. v. Law Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 357 (6th Cir. 2021).

Lastly, there remains the issue of arbitration between Hurley and the NBPA.  Before the district court, the two agreed that Hurley was required to bring any challenges to the propriety of the NBPA's denial of his application before an arbitrator.  To the extent that issue is still live, we leave Hurley with whatever arbitration rights he previously possessed.

We affirm the judgment of the district court.